In the matter of the Probate of the Will of JOHN S. BROWN, deceased..

### January 4, 1888.

**Probate of Will—Evidence.**—In proceedings to probate a will, the mental
capacity of the testator being in controversy, it is error to refuse to allow
a contestant to testify as to the verbal acts of the deceased prior to the
date of the will, and to state what he said when angry and violent.

**Same—Witness—Examination of Adversary.**—In such proceedings, one
of the proponents was examined as a witness for the contestants.  *Held,*
that under the provision of Laws 1885, c. 193, § 1, he could be interro-
gated by contestants concerning statements said to have been made by
him to others concerning the mental capacity of the deceased.

Appeal by the contestants from a judgment of the district court
for Le Sueur county, entered by direction of *Edson*, J., (before whom
the action was tried without a jury,) reversing an order of the pro-
bate court, and allowing and admitting to probate, as the last will
of John S. Brown, deceased, an instrument bearing date June 22,
1874, propounded for probate by the devisees and legatees named
therein, and contested by the testator's children.   An appeal in an

earlier proceeding, in which a later will (bearing date August 25, 1880) was refused probate, is reported, 32 Minn. 443.

. *E. Southworth,* for appellants.

*B. S. Lewis* and *Francis Cadwell,* for respondents.

COLLINS, J.   John S. Brown made the will in dispute June 22, 1874, and died in April, 1883.   Upon an attempt to probate the will in Le Sueur county, it was contested upon the ground of alleged mental incapacity of the deceased, and of undue influence exercised by one of the legatees named in the will.   On trial the court found for the contestants upon both grounds, and refused to admit the will to probate.   Upon appeal to the district court, the decree of the probate court was reversed and set aside, and said will allowed and admitted to probate as the last will and testament of said deceased. From the judgment entered in district court contestants appeal, claiming and assigning 38 errors.   If it were necessary to discuss all these, they might be very much reduced in numbers by classification; but, as we look at the case, it can be disposed of by a consideration of one ruling in the court below.

Upon the examination of the witness Ida Brown, one of the contestants, she was asked how her father (the deceased) acted, and what he said, upon certain occasions prior to the making of the will.   As the main issue was the sanity of the testator, the object of this question was to show the condition of his mind by his verbal as well as his physical acts.   To the repetition, by one of the contestants, of the words of the deceased, objection was made by the proponents, upon the ground that it was inadmissible under Gen. St. 1878, c. 73, § 8, and the objection sustained by the court.   Obviously, this was error.   A party to an action cannot give evidence of a *conversation* with a deceased person relative to any matter *at issue* between the parties, but this statute must be strictly construed.   *Chadwick* v. *Cornish,* 26 Minn. 28, (1 N. W. Rep. 55.)   The questions did not tend to draw out any *conversation* between the witness and deceased relative to the will, but to present to the court his angry and violent exclamations,—what he said, as well as what he did,—and thus indicate the state of his mind.   His verbal acts were, equally with his physical acts, competent for the purpose of proving the mental con-

v.38M—8

dition of the testator.   Because such testimony was excluded, a new trial must be had.

Ordinarily we ought not to anticipate rulings which may be made upon another trial; but as the deposition of one of the proponents, George W. Brown, will again be used in all probability, we deem it advisable to advert to a few of the rulings of the trial court upon interrogatories found in said deposition, and to which attention is called in contestants' 6th, 7th, and 8th assignments of error.

Upon being questioned, the witness stated that he remembered that, when a boy, the testator was kicked in the head by a horse. This incident in the life of the deceased is of no moment unless it affected him mentally.   If it did, it becomes material, and perhaps very important, when connected and considered with his later actions. The answer to the next question, which was as to the testator's mental condition after the injury, should have been received.   It was also erroneous to sustain proponents' objections to questions put to the witness concerning statements made by him to others relative to the alleged injury, and its effect upon the mind of the testator.   While these questions were predicated somewhat upon the supposition that the witness would deny that the injury mentioned in any way disturbed the mind of the one who received it, and neither denial nor admission were permitted by the court, it is evident from the testimony of George W. Brown that he claimed the deceased to have always been right mentally.   The objection urged, and the one sustained by the court, was, as we understand it, that this witness, who was a party to the proceeding, called by his opponents, could not be impeached by those who called him, and hence it was quite immaterial to lay the foundation for impeachment.   Without deciding what might be done had the witness denied making the statements attributed to him, or discussing the law upon the subject as it existed prior to the passage of Laws 1885, c. 193, we hold that, by the terms of that act, the objections were improperly sustained.   By section 1 thereof, a party to the record, or one for whose benefit a proceeding is prosecuted or defended, is compelled to testify as if under cross-examination.   The object of the statute is to authorize an adversary to be examined, unprotected by the well-known rules of evidence.   The ef-

fect is to compel him to undergo examination as well as cross-examination at the hands of the opposition if it so desires. It follows that any question which could properly have been asked the witness, were he undergoing the ordinary cross-examination, was legitimate.

Judgment set aside, and a new trial granted.