GEORGE PFEFFERKORN and Another v. C. J. SEEFIELD.[1]

November 11, 1896.

Nos. 10,418—(94).

**Adverse Party as Witness—Examination.**

Under G. S. 1894, § 5659, a party to a record of any civil action or proceeding, called at the instance of the adverse party, and examined as a witness as if under cross-examination, may be compelled to testify as fully upon all matters material to the issue as any other witness.

**Same—Conspiracy—Intimate Domestic Relations.**

Where parties holding intimate domestic relations are charged in the pleadings with a conspiracy to defraud, great latitude should be allowed in their cross-examination under the statute.

**Case for Jury—Directing Verdict.**

*Held,* also, that the evidence made a case for the jury, and the trial court erred in directing a verdict for the defendant.

Appeal by plaintiffs from an order of the district court for Winona county, Gould, J., denying a motion for a new trial.     Reversed.

*Burr D. Blair* and *Brown & Abbott,* for appellants.

*E. Hill* and *A. H. Snow,* for respondent.

BUCK, J.     On January 16, 1889, and for several years prior thereto, C. W. Seefield, who was the father of this defendant, had been engaged in an extensive business, buying and selling grain at various stations along the railroads, with his office and place of business at St. Charles, Minnesota, where the plaintiffs were engaged in the banking business.     For three years prior to this date the defendant had been in the employment of said C. W. Seefield, at St. Charles, in his grain office, for the first year as bookkeeper, and for the last two years as cashier.     He was the next man in authority to his father, did all the corresponding, wrote all the checks and drafts, made all the deposit slips and the checks on the bank of the plaintiffs, knew all the money which was deposited in the bank and all which was drawn out, and had general authority and knowledge of the business of his father.

[1] Reported in 68 N. W. 1072.

On the night of January 16, 1889, C. W. Seefield absconded to Canada, and has never returned.    The morning of that day his account at plaintiffs' bank was overdrawn to the extent of $563, and he was then hopelessly insolvent, being indebted over $50,000, and having also overdrawn his account with the Teichman Commission Company of St. Louis, Missouri, to the amount of $1,908.30, but had a credit with the firm of Cowdry & Co. to the extent of $75.    On the said 16th day of January, 1889, this defendant wrote two drafts, one upon said Teichman Commission Company for $1,000, and one upon said Cowdry & Co. for $300, and had them signed by his father, and took them to the plaintiffs' bank, where he deposited them, and obtained credit to his father for their face value, less $62.63.    The defendant at the same time, without giving any reasons therefor, requested plaintiffs to hold the drafts until after the next train leaving St. Charles, at four o'clock, which the plaintiffs did.    On the same day the defendant drew a check on the plaintiffs' bank, to which he signed his father's name, for $1,000, and about four o'clock p. m. of the same day, and after he had obtained credits on the drafts of $1,300, he presented it to the bank, and received from plaintiffs the sum of $1,000 in cash, and, taking this money to his father's office, gave it to him.

About nine o'clock p. m. of the same day this defendant went to a lawyer's office in St. Charles, and the father then and there executed and delivered to the defendant a deed of 200 acres of land, worth $4,500, for which the defendant gave no consideration.    He had no talk about its being deeded to him; and he testified that no explanation was made of this transaction, and he says that he thought nothing about it.    About two hours later C. W. Seefield took the train at St. Charles, and absconded.    The next day the defendant charged C. W. Seefield with 10 barrels of flour, worth $64, sold to defendant's mother, which she never had.    Several other charges of a similar character were made by the defendant where the parties never had the property charged to them.    On the evening of January 17, 1889, the sheriff attached the entire property of C. W. Seefield, but this defendant made no attempt to wire or notify his father of this fact.    In a few days he received a telegram from his father, from Winnipeg, Manitoba.    After the attachment, the business of C. W. Seefield at St. Charles stopped.

The complaint in this action charges a conspiracy between the two Seefields to defraud the plaintiffs out of the moneys and credit which had been thus obtained of plaintiffs. We have not recited all of the facts bearing upon the subject, but have stated the major portion thereof. By the repeated rulings of the trial court much evidence bearing upon this charge of conspiracy, and tending to prove it, was excluded.

The plaintiffs placed the defendant upon the stand as a witness for cross-examination under the statute, and counsel for the latter objected to such cross-examination at length, on the ground that the fraud charged amounted to a charge of conspiracy, and that such conspiracy must be established before the acts of C. W. Seefield could be shown; the trial court stating that "to cross-examine a witness upon matters upon which he never would have been examined in chief, except he was called by the party cross-examining him, partakes of the nature of the case and rule suggested by counsel in conspiracy cases," and that the examination must be such as the party would be entitled to if he had been examined in chief; and the court assumed, and so stated, that the defendant would not do anything in this case against his interest, and that, if it is evident that the defendant would not examine upon any subject, the person calling is precluded from examining the witness on such subject.

Placing this construction upon the statute, the court limited the cross-examination to such subjects as, in his opinion, would have been to the interest of the defendant to have gone into if the defendant himself had gone upon the stand as a witness in his own behalf for direct examination; and at the close of the plaintiffs' case, on defendant's motion, the court directed a verdict for the defendant.

The view which the learned trial judge took of the right of cross-examination under the statute was altogether too narrow and restricted, and not in accordance with the usual practice. The defendant might not deem it for his interest to go upon the stand and testify at all upon the questions involved, and it would not be the duty or right of the court upon its own motion to compel the defendant to do so. If the evidence would implicate the defendant in a case of conspiracy or attempt to defraud the plaintiff, it is plain to see that it might not be to the interest of the defendant to go on the stand as a

witness and testify in chief upon the subject. That is the very thing he would not be liable to do, because it would be against his interest. Even if he went upon the stand as a witness in his own behalf, his counsel might restrict his testimony to such portions as he thought of interest to himself; and while, in this respect, the right of cross-examination might exist, the evidence might not be of such a character as to entitle a party to a cross-examination which would disclose or draw out the material facts bearing upon the question at issue, because a party will not ordinarily be permitted to cross-examine a witness except as to facts and circumstances connected with matters stated in his direct examination.

G. S. 1894, § 5659, provides that:

"A party to the record of any civil action or proceeding,   *   *   * may be examined upon the trial thereof as if under cross-examination at the instance of the adverse party or parties or any of them, and for that purpose may be compelled in the same manner and subject to the same rules for examination as any other witness to testify, but the party calling for such examination shall not be concluded thereby, but may rebut it by counter testimony."

The provision of the statute authorized the plaintiffs to examine the witness as upon cross-examination, and as fully upon all matters material to the issue as any other witness. The trial court should not have hampered or restricted the examination of this witness by plaintiffs' counsel to any greater extent than would have been legitimate in the examination of other witnesses. The fact that the witness denied the charge of conspiracy to defraud the plaintiffs did not change the rule. The plaintiffs, calling him, were not concluded by any such testimony, but had a right to insist that the entire account of the transaction should be disclosed by the witness, to show, if possible, that a conspiracy existed between him and his father to defraud the plaintiff. Schmidt v. Durnam, 50 Minn. 96, 52 N. W. 277.

Great latitude should be allowed in the cross-examination of a witness under the statute when the question involved is one of a conspiracy to defraud. And on cross-examination as a witness under the statute, the adverse party, charged with participating in such a fraudulent transaction, is entitled to no greater immunity than any other witness testifying directly or on cross-examination. "The essence of a conspiracy, so far as it justifies a civil action for damages, is a concert or combination to defraud or to cause other injury to per-

son or property, which actually results in damage to the person or property of the person injured or defrauded." 2 Rice, Ev. 769, 770.

As there must be a new trial awarded by reason of the erroneous rulings of the trial court, we express no opinion as to the weight of the evidence, but we are of the opinion that there was sufficient evidence tending to show a conspiracy between the father and son in this case to have required its submission to the jury, together with the other evidence which should have been permitted under the rule suggested as to the cross-examination of the defendant under the statute.

While fraud is never to be presumed, a slight degree of collusion is competent testimony to show a fraudulent conspiracy, especially where the transaction is one between members of the same family. The good faith and motives of the father and son in their dealings with the plaintiffs in this case were involved, and direct, positive proof upon all these dealings was not required. Berkey v. Judd, 22 Minn. 287. Circumstantial evidence might be received. Dayton v. Monroe, 47 Mich. 193, 10 N. W. 196. Courts generally are exceptionally liberal in the admission of evidence where the investigations relate to fraudulent transactions.

For these reasons stated, the order denying the motion for a new trial is reversed.