## LANGFORD v. ISSENHUTH.

A complaint may be objected to for the first time on appeal for want of facts, provided it altogether fails to set out a cause of action and is incapable of being made good by amendment.

Where a complaint omits facts essential to a complete statement of a cause of action which might have been supplied by amendment, and all the omitted facts are proved at the trial, the defects are not grounds for reversal.

Laws 1909, c. 72, authorizing cross-examination of an adverse party at the trial, was intended to permit a party to call his adversary without making him his own witness, but was not designed to affect the competency of witnesses, the order of trial, nor the rule forbidding a party to make out his case by cross-examining the witness of the adverse party.

Laws 1909, c. 72, providing for the cross-examination of an adverse party at the trial, authorized the widest and freest scope of examination by the use of leading questions, if desired, and a full and minute investigation of the whole case.

Where an adverse party is called for cross-examination as authorized by Laws 1909, c. 72, his re-examination by his own counsel must be limited to the particular matters as to which he was interrogated as an adverse witness.

In an action for broker's commission, evidence **held** to warrant a finding that the broker was the procuring cause of the sale.

A broker is a procuring cause of sale if he is the original discoverer of the purchaser and has started the negotiations by which a sale is finally consummated.

A formal personal introduction of buyer to seller by a broker is not essential to the broker's recovery of commission, where he was instrumental in bringing the parties together so that a sale was effected.

A middleman is a broker whose duties are limited by his contract to finding and procuring a purchaser able, willing, and ready to accept his client's terms or to effect a transaction with his client on any terms satisfactory to both, the term "middleman" being merely descriptive of the nature of the contract of employment, he being in no fiduciary relation to his principal nor under any obligation not to receive compensation from the opposite party to the transaction, while a broker, in addition to the duties of a middleman, is employed to use discretionary authority for the benefit of his employer and to act for his best interests, and therefore may not accept a secret double employment or commissions from both parties.

A memorandum written by a broker in the presence of his principal at the time of his employment, describing the property of the principal which the broker was employed to list for exchange, and the fact that he was to receive 2 per cent. commission, was a mere self-serving declaration and inadmissible to corroborate the broker's other evidence in an action for commissions.

Erroneous exclusion of evidence on cross-examination is cured by admission of evidence on direct examination tending to prove the same facts.

Erroneous exclusion of evidence cannot be successfully complained of on appeal when it was not prejudical.

(Opinion filed, February 29, 1912.)

Appeal from Circuit Court, Spink County, Hon. ALVA E. TAYLOR, Judge.

Action by George W. Langford against John Issenhuth. Judgment for plaintiff, and defendant appeals. Affirmed.

*William Issenhuth,* for appellant. *Roy T. Bull,* for respondent.

SMITH, J. Appeal from the circuit court of Spink county. Action for commissions. Jury trial. Verdict for plaintiff upon which judgment was entered. Defendant appeals from the judgment and from an order overruling his motion for a new trial. The complaint alleges that plaintiff is a real estate broker engaged in the business of selling and exchanging lands and stocks, with

his principal place of business at Aberdeen; that about the 17th of June, 1909, defendant listed with him for sale or trade certain personal and real property at Northville, Iowa; that defendant agreed in case plaintiff would find a purchaser for said property at its estimated value, or at any price satisfactory to defendant, that defendant would pay plaintiff for his services an amount equal to 2 per cent. of the selling price of said property. That thereafter, about the 25th of June, plaintiff placed defendant in communication with Berkner Bros. of Sleepy Eye, Minn., as prospective buyers, ready, willing, and able to pay for all of said property, and that on or about the 5th day of July, 1909, defendant and said Berkner Bros. did make and consummate a deal for the sale of said property for the sum of $17,600.

Defendant's answer is, first, a general denial; second, that any transactions had between defendants and Berkner Bros. are not yet closed, and if plaintiff was instrumental in bringing defendant in communication with Berkner Bros. he was acting as the agent for Berkner Bros. and received his commission for such services from them; third, that, if plaintiff did act as agent for defendant, he was unfaithful to his trust in that, without the knowledge or consent of defendant, he bargained for a commission from Berkner Bros., by reason of which defendant was not liable for any alleged services, but defendant denies that any were rendered. Appellant presents 58 assignments of error, and alleges that the evidence is insufficient to support the verdict for 15 specific reasons, and also assigns 4 particulars wherein the verdict is alleged to be contrary to law and evidence. Much to our relief and satisfaction, however, we find this great number of assignments grouped and discussed in appellant's brief under certain propositions to be considered upon this appeal. At the close of plaintiff's case, defendant moved the court to instruct the jury to return a verdict for defendant on the grounds: (1) That the evidence does not show that plaintiff was the procuring cause of the transfer of defendant's property; (2) the evidence discloses that plaintiff was not acting in good faith toward defendant as his broker and agent, in that he was acting for Berkner Bros. in the same capacity as for

defendant, and the testimony does not disclose that defendant was aware or had been informed of such fact; (3) the evidence fails to show that Berkner Bros. had any knowledge that plaintiff was to receive any commission from defendant. This motion was renewed at the close of all the evidence and the ruling denying it was excepted to and is assigned as error upon this appeal. It therefore becomes necessary briefly to review the evidence. Plaintiff testified that defendant came to his office on th 17th of June, 1909, and desired to list property he had at Northville either for sale or exchange, but it was then with reference to trading for land; estimated the stock at about $12,000, the building at $3,000, and the fixtures $1,000; that defendant, when asked what he would be willing to give as commission, said, "I suppose you will get a commission from the other side," and the winess answered, "I expect to," and they then agreed to a commission of 2 per cent. upon all his stuff, including building and fixtures. Plaintiff then offered in evidence a memorandum, marked "Exhibit K," a listing card, as follows:

George W. Langford, Real Estate, Collections of Rents.

Aberdeen, Brown County, S. D.,

6—17—1909.

John Issenhuth, Northville, S. D.

| | |
|---|---|
| $12,000 Gen. Mdse. about ........................ | $12,000 |
| Bldg. ......................................... | 3,000 |
| Fixtures ...................................... | 1,000 |
| | $16,000 |

Will invoice at 1st cost with 2 per cent. for freight. 2 per cent. com.

Plaintiff testified: "It was in my own handwriting and was drawn up the 17th day of June, 1909, at my office in Aberdeen. Defendant was present when it was made. Made the memorandum from statements made to me while he was looking at me. Sat right at the desk close together." Plaintiff then offered in evidence Exhibit A "as a corroboration, not as a contract—a memorandum made at the time, because there is a form of general denial in the answer which puts in issue the fact whether this was

listed or not—to show this as a matter of corroboration and identification." The exhibit was received in evidence over defendant's objection that it was incompetent, immaterial, and irrelevant for any purpose. The witness further testified: "I met one of the firm of Berkner Bros. of Sleepy Eye, Minn., or rather he came into my office a few days after this talk, about the 25th of June, and I spoke to him concerning this Issenhuth stock of goods and he said that they had a section of land in North Dakota they wanted to trade for that stock of goods and urged me to bring the matter about"—that Berkner saw the listing card of defendant's property with note of commission on it, and said he did not care; he would allow $1 an acre commission on the land. Plaintiff then wrote defendant a letter which is as folows:

"Aberdeen, Brown County, S. D. 6—25—09. John Issenhuth, Northville, S. D.—Dear Sir: Berkner Bros. of Sleepy Eye, Minn., have just listed with me for trade, 640 acres, 7 miles north of Wyndmere, N. D., Richland Co. The price is $40.00 per acre. 480 acres are in crop, and buildings are but moderate. A man J. J. W. Devorak living at that town of about 1,500 population knows the land well and would they say take a man out free to see the land. One of the brothers was in here last night and said if you would go and look the land over, and like it well enough to make a contract subject to their acceptance, they would come at once. The midnight train catches a train at Oakes, and you can reach the land and get to Oakes the same evening. I expect to be in Northville over Sunday, and we can talk it over to-morrow evening. There are 200 acres of flax, 100 to wheat and balance to corn, oats and barley, but he wouldn't say as to crop. They get all on 160 acres and half of balance. Yours truly, Geo. W. Langford."

Plaintiff further testified, in substance, that he went to Northville the next Sunday and saw defendant on the street right after dinner; talked to him about going up to see the land and he said he could go out on Sunday and only miss a day and get back Monday night. Some weeks later had a conversation with him about the terms of the deal that he made. First learned that

the deal had been closed when Ed Berkner called at his office, perhaps a week after he had written the letter. After he learned this from Berkner, wrote defendant a letter, Exhibit C (which was received in evidence, and is a demand for the commission alleged to be due). Plaintiff then offered in evidence Exhibits D, E, F, G, and H, all of which were objected to as incompetent, immaterial, and irrelevant, which objections were overruled. These exhibits are letters relative to the payment of commissions and are wholly immaterial, but we think nothing contained in any of them could be injurious to appellant and they need no further consideration.

Plaintiff thereupon called defendant, John Issenhuth, for "cross-examination under the statute" (chapter 72, Laws 1909), who testified that he was not acquainted with Berkner Bros. on the 17th day of June, 1909, nor at the time he received plaintiff's letter advising him of the prospective deal; that about the 27th or 28th of June he went to Richland county, N. D., to see the land of Berkner Bros. referred to, being induced to do so by plaintiff's letter; that he entered into a contract with Berkner Bros. for the exchange of his store, lot, and stock of goods, for the Richland county land; that pursuant to said contract he received a deed from Berkner Bros. for the land, and deeded his lot and store building and gave a bill of sale of his stock of goods at Northville to Berkner Bros.; that the store building, lot, and stock of goods were turned in on the trade at the estimated value in the contract of $17,700; that no mention was made of Berkner Bros. when he was in Langford's office on June 17th. The defendant then called plaintiff, George W. Langford, as a witness "for cross-examination under chapter 72 of Laws of 1909," who testified that on June 24, 1909, he had a conversation with Edward Berkner of the firm of Berkner Bros.; that this was the first time he knew of Berkner Bros., or that they had land in Richland county, N. D.; that Edward Berkner at that time listed with him 640 acres of land for sale or exchange as stated in the memorandum marked "Exhibit I," made at the time. The witness was then asked to state what arrangement or understanding, if any, he had with

Berkner Bros. with reference to a commission on the sale of the land, which was objected to by plaintiff as immaterial, irrelevant, and not tending to prove any issue, which objection was sustained and exception taken. Defendant, Issenhuth, called as a witness, testified in his own behalf that he was at plaintiff's office at Aberdeen on the 17th of June at the time testified to by Langford; he was then asked to state whether at any time prior to the consummation of the trade he had a conversation with Mr. Langford in which he asked him if he expected to get a commission from the other side. The question was objected to by plaintiff "as leading and suggestive, calling for conclusions of the witness, and further that it tended to disprove a fact which is not stated of record," which objection was sustained and exception allowed. In response to other questions, the witness at the same time testified that *there was nothing said with reference to plaintiff's getting a commission from the other side, or any party that he might bring to deal with.* He further testified that the conversation on the 17th of June was upon the basis of a deal; was mostly spoken of as a trade; that he was to pay Langford 2 per cent. on the stock and property, including building and fixtures, in which he conducted the business, and that 2 per cent. upon the invoice should be added to cover cost of carriage or freight; that his property was to be traded for land. He further testified that he *did not give Mr. Langford any discretion as to fixing the interest or value of the land or the balance to be paid down, or anything like that.* Plaintiff, Langford, recalled by defendant for "further cross-examination under the statute," further testified that he had an arrangement with Berkner Bros. that in case a deal for their land was made, he was to receive $1 per acre as commission; that Berkners desired to trade the land for a stock of goods; that the land was estimated at $40 an acre; that on the Sunday following June 25th, he met defendant at Northville and had a talk with him as to a commission; that, at the time he listed the land of Berkner Bros. for exchange, there was something said about a commission from the other side in case a sale or trade was effected; that there was a commission due him from Berkner Bros., but that he had

never received it; that he had attempted to bring suit against Berkner Bros. to recover the same.

Defendant, John Issenhuth, being recalled, testified that the witness Swan was not in Langford's office at any time when he was there the 17th of June; that at the time the contract of exchange was drawn up between himself and Berkner Bros. he stated to them that he was to pay Langford 2 per cent. We believe the foregoing covers substantially all the material evidence in the case.

[1, 2] We shall consider the questions presented upon this appeal in the order in which they are discussed in appellant's brief. Appellant contends, first, that the complaint fails to state a cause of action. No demurrer was interposed to the complaint, and no objection to its sufficiency was made at the trial. It is appellant's contention, however, that this objection may for the first time be presented in this court. This is true, however, only when the complaint fails altogether to set out a cause of action, and is incapable of being made good by amendment. Great latitude of construction may be indulged to sustain a complaint when the objection is taken for the first time at the trial, and this latitude certainly is not less when the objection is taken in this court. Where the complaint omits facts essential to a completely stated cause of action, which might be supplied by amendment, and all the facts are proved at the trial, defects in the complaint constitute no ground for a reversal of the judgment. Johnson v. Burnside, 3 S. D. 230, 52 N. W. 1057. Appellant assigns error upon numerous rulings of the trial court sustaining plaintiff's objections to questions asked by defendant's counsel on cross-examination of plaintiff's witnesses.

[3] Certain of these assignments are discussed apparently as though the trial court had entertained some erroneous view of the effect of chapter 72, Laws of 1909, under which certain witnesses were called. The statute reads as follows: "Section 1. A party to the record of any civil action or proceeding, or a person for whose immediate benefit such action or proceeding is prosecuted or defended, or the directors, owners, superintendent or managing

agents of any corporation which is a party to the record, may be examined by the adverse party as if under cross-examination, subject to the rules applicable to the examination of other witnesses. The party calling such witness shall not be bound by his testimony, and the testimony given by such witness may be rebutted by the party calling him for such examination by other evidence. Such witness when so called, may be examined by his own counsel, but only as to the matters testified to on such examination." This act is identical with section 4662, Revised Laws of Minn. 1905, which many times has been before the Supreme Court of that state for interpretation. It is said by that court that the object of the statute was to permit a party to call his adversary at the trial without making him his own witness, and elicit from him, if possible, material facts within his knowledge by a cross-examination precisely as if he had already been examined on his own behalf in chief. Suter v. Page, 64 Minn. 444, 67 N. W. 67; In re Brown, 38 Minn. 112, 35 N. W. 726. The act was not designed to affect the competency of witnesses (Wolford v. Farnham, 44 Minn. 159, 46 N. W. 296; National German-American Bank of St. Paul v. Laurence, 77 Minn. 282, 79 N. W. 1016, 80 N. W. 363; Lloyd v. Simmons, 90 Minn. 237, 95 N. W. 903), nor to affect the order of trial, or the rule which forbids a party to make out his case by cross-examining the witness of the adverse party (Schmidt v. Schmidt, 47 Minn. 451, 50 N. W. 598).

[4] It is said that the widest and freest scope is to be given the examination, leading questions may be put, and admissible evidence which would tend to weaken the case of the witness or strengthen that of the party calling him may be drawn out. Such witness may be contradicted or impeached by the party calling him. Schmidt v. Durnam, 50 Minn. 96, 52 N. W. 277; Pfefferkorn v. Seefield, 66 Minn. 223, 68 N. W. 1072; Birum v. Johnson, 87 Minn. 362, 92 N. W. 1. The whole case may be fully and minutely investigated, and objections on the ground of materiality are not favored. Pfefferkorn v. Seefield, 66 Minn. 223, 68 N. W. 1072; In re Brown, 38 Minn. 112, 35 N. W. 726; Couch v. Steele, 63 Minn. 504, 65 N. W. 946. See Bennett v. Backus Lum-

ber Co., 77 Minn. 198, 79 N. W. 682; Strom v. Montana Cent. Ry. Co., 81 Minn. 346, 84 N. W. 46. It is impracticable to review these decisions or to discuss their application to the proceedings complained of by appellant. It is sufficient to say we find nothing in the record which would warrant a reversal of this case because of any abuse or misconstruction of the statute. It appears to us that the main purpose of this statute is to permit an adverse party to be called as a witness to prove or to be interrogated concerning facts material to the case of the party calling him, and that such witness may be called to prove a single material fact, or any number of material facts, even the whole case. The facts as to which the party calling such witness may desire to examine him are wholly within his discretion.

[5] But, when the party so called comes to be examined by his own counsel, such examination must be limited to particular matters concerning which the adverse party has interrogated such witness. If his own counsel desires to use the witness to prove further facts material to his case, which may not be brought out because of this limitation of the statute, he must thereafter make the party his own witness for that purpose. It appears to us that the theory or statement that the adverse party is called for "cross-examination" does not accurately express the intent of the statute, the purpose of which it seems, would be more clearly expressed by saying that because of the adversary character of the witness, the same rule as to leading questions and the like should apply as though the witness was under cross-examination or was an adverse witness under familiar rules. The statute seems to make this clear by providing that the testimony of a witness so called shall not bind the party calling him, and may be rebutted by other evidence, precisely as though the evidence had been elicited on proper cross-examination of the witness when called by the other party. With this fundamental idea of the purpose of the statute in mind, it would seem that the practical application of the statute would be rendered comparatively simple and free from difficulty. The right to call any such witness existed before the enactment of the statute, but the party calling him took

the chance of being bound by his testimony, and could not impeach the witness by showing contradictory statements, or that the witness was unworthy of belief.   The statute proceeds apparently on the theory that an adverse party thus called may speak the truth in favor of the party calling him, and thus end or shorten the case, and that such possibility is sufficient reason for changing the old rules, so far as parties to the action are concerned.   A witness who is a party to the action is therefore called the same as any other witness to prove certain facts, and not for cross-examination.   But, because he is deemed an adverse witness, the statute provides that the mode in which he is examined may be that ordinarily employed in cross-examination.   Confusion of thought arises when we try to conceive of an attempted cross-examination where there has been no direct examination.   The statute is intended to permit leading questions to this class of witnesses to permit their impeachment by the party calling them, and the rebuttal of their testimony by other competent evidence.

We do not find in the record anything which could have prejudiced the rights of appellant in the calling or examination of witnesses under this statute.

[6] Appellant next contends that plaintiff was not the procuring cause of the sale and therefore not entitled to recover a commission, and cites a large number of decisions which it is urged support this contention.   We have examined the cases with much care, and in our opinion they do not sustain appellant's contention as applied to the record before us.   A review of the numerous cases cited is impracticable here, but among them we note Sievers v. Griffin, 14 Ill. App. 63.   In that case defendant had listed his property with a number of real estate agents, and, while he refused plaintiff a formal contract, he told him he might also undertake to sell if he wanted to, but that whoever sold would get the commission.   Plaintiff advertised the property for sale which called it to the attention of one (later a purchaser of the property) who called upon plaintiff and learned the price at which the property could be bought, but plaintiff did not at any time disclose to the caller the name of the owner of the property, nor

place him in communication with the owner. The court held that plaintiff was not entitled to recover for the reason that the buyer and seller must in some way be brought into communication by the broker. It is conclusively shown, in fact conceded in this case, that Langford placed defendant in communication with Berkner Bros. and that the sale to Berkner Bros. was the direct result of such act.

[7] In Smith v. McGovern, 65 N. Y. 574, defining the words "procuring cause," the court said: "It means the original discovery of a purchaser by the plaintiff, and the starting of a negotiation by the plaintiff, together with the final closing by or in behalf of the defendant with the purchaser through the efforts of the plaintiff." Appellant's contention that plaintiff's discovery of Berkner Bros. was wholly casual and not the result of advertisement or other efforts on his part cannot affect plaintiff's claim for commissions, if in fact the plaintiff originated the negotiations between Berkner Bros. and defendant which finally resulted in a sale or exchange of the property.

[8] It certainly cannot be successfully contended that, under an employment such as is alleged in the complaint and is shown by the evidence in the record, it is required that plaintiff give Berkner Bros. a formal personal introduction to defendant as a condition to a recovery of commissions, where it clearly appears that defendant and Berkner Bros. were brought together and consummated the exchange of property as a result of plaintiff's letter to defendant, hereinbefore quoted.

[9] Appellant's further argument is founded upon the contention that it is a fraud upon his employer which deprives an agent of all right to compensation, where he attempts to act for two persons whose interests are conflicting. In the application of this rule appellant attempts to draw a distinction between the duties and obligations of one who acts as a broker, and one who acts as a "middleman." The contention is that plaintiff in the complaint alleges himself to be, and brings this action as, a broker, and for that reason the court erred in submitting to the jury any question as to his right to recover as a "middleman." In 19 Cyc.

116 (4) it is said: "The broker is, strictly speaking, a middleman or intermediate negotiator between the parties, and is not in the fiduciary relation of an agent to his principal, but must favor neither the one nor the other of the parties between whom he effects a transaction." Hence there was no inconsistency between plaintiff's allegation that he was engaged in business as a broker and proof of his right to recover commissions as a middleman. A middleman is defined to be "a person employed to bring two or more parties together, the parties when they meet to do their own negotiating and make their own bargain; an agent who merely brings the parties to the sale together, and upon whom does not devolve the duty of negotiating for either, and who may contract for and receive commissions from both." 27 Cyc. 487. A middleman, therefore, is a broker whose duties are limited by his contract to finding and producing a purchaser able, ready, and willing to accept his client's terms, or to effect a transaction with his client upon any terms satisfactory to both. The term "middleman" is merely descriptive of the nature of the contract of employment. But any so-called broker may, by his contract of employment, so enlarge his duties or obligations as to bring himself into fiduciary relations with his principal, and does so when his contract is such that his employer is entitled to rely on him to secure the best bargain possible, or he is intrusted with discretionary authority to be exercised in his employer's interest. In such case he can accept neither employment nor compensation from those whose interests are adverse to his employer's. The rule forbidding a secret double employment then applies, and a broker cannot receive commissions from both parties to the transaction unless they consent to his acting for both, either expressly or by implication from the circumstances of the case. 19 Cyc. 234 (i). If, however, the broker acts merely as a middleman, it is immaterial that either party is ignorant of the broker's employment by the other party. Montross v. Eddy, 94 Mich. 100, 53 N. W. 916, 34 Am. St. Rep. 323. The answer alleges that plaintiff's contract of employment created fiduciary relations with defendant, and that plaintiff deprived himself of the right to any commissions by agreeing to receive commissions for the same services from

Berkner Bros., and that such relations were unknown to defendant. The two phases of the instructions complained of by appellant were directly responsive to the claim of defendant that plaintiff was acting in a fiduciary capacity, and the opposing claim of plaintiff that he acted as middleman only. The instructions to the jury cover both these issues and correctly state the law. In part, the court told the jury: "It is a fundamental law, going way back into history, that no man can serve two masters, and, where one acts for the seller and does what he can to further the interest of the seller, he cannot at the same time act for the buyer and further the interests of the buyer, as the interests of buyer and seller are conflicting and opposed to each other. Now, if the plaintiff acted as the agent of defendant in the common acceptation of that term, he would come within this rule, and, if you find from the evidence that the plaintiff acted as such agent of defendant, then, under this principle of law, the court instructs the jury that an agent ought, as far as possible, to represent his principal, and to the best of his ability he should endeavor to successfully accomplish the object of his agency. * * * In all things he is required to act in entire good faith to his principal. * * * It is the duty of a broker, like all other agents, to act only in the same transaction for the party who employs him, and not to represent the other party also, unless the principal consents thereto. When the principal employs him, he is entitled to the benefit of his full skill, knowledge, and advice, unless he contracts otherwise. The principal may, of course, knowingly consent that the broker may also act for the other party in the same transaction, but, unless he does so consent, the broker must act for him alone and not take upon himself a double agency. One who employs a broker to find a customer to exchange real estate with him has the right to assume that he is acting solely in his interest, and is not to receive a commission from the customer. *In order that a broker may recover commissions from either party,* if he is acting for both parties, both parties must have knowledge that the broker is acting, and do not object thereto, but allow him to so act, and agree to pay him a commission; but the consent of both principals to such double agency must be clearly proved. The court instructs

you that if you find from the evidence that the plaintiff acted as a middleman only, then the court advises you that a somewhat different rule of law applies. If you find from the evidence that Langford was not employed to negotiate a sale for Issenhuth, but simply to bring him a party who was willing, able, and capable to purchase or trade, and permit Issenhuth to make his own bargain with the party brought by plaintiff—in other words, if Langford had the property of Issenhuth and Berkner Bros. in his hands to seek a purchaser or a person who would make a satisfactory trade, and his only duty was to bring a party to either who was willing, able, and capable of dealing, and was not to do any of the negotiating himself, but was to leave the owners to make their own deal independent of Langford—then and in that case he would be a mere middleman, and if, under such agreement, Langford brought Berkner Bros. to the notice of Issenhuth, and they made and consummated a deal and exchanged their property without further acts of Langford, the plaintiff is entitled to his commission from Issenhuth, * * * and it is for you to determine whether or not the plaintiff has shown, by a fair preponderance of evidence, that he comes within this rule, and that he was in fact acting simply as a middleman." These instructions correctly and with sufficient clearness state the law of the case, and for that reason it is unnecessary to discuss the instructions requested by the defendant and refused, and the assignment of error based thereon.

The instructions given fairly and sufficiently submitted to the jury the question whether, at the time of his employment, plaintiff advised defendant that he expected a commission from both parties, should a trade be consummated, and whether Berkner Bros. were advised that plaintiff expected to receive a commission from plaintiff, and consented thereto. There is a direct conflict in the evidence as to whether plaintiff at the time of the listing told defendant he expected to receive commission from both parties, while the evidence is undisputed that Berkner Bros. were so advised and consented thereto. The jury were told, in effect, that,

Vol. 28 S. D. 30.

to entitle plaintiff to a recovery, the burden of proof was upon him to show, by a preponderance of the evidence, that both defendant and Berkner Bros. were so advised and consented to the double agency, and that this consent must be clearly proved. This instruction was given as a part of defendant's theory of the case, which was thus fairly submitted to the jury upon the evidence before them, and their finding must be regarded as conclusive in this court. The trial court at the same time also submitted to the jury, in a correct statement of the rule of law, the question of plaintiff's right to recover commissions as a "middleman." It is apparent, therefore, that the finding of the jury is conclusive against appellant upon either theory of the case, unless the court committed reversible error in the reception or rejection of evidence.

[10] In our opinion the court was in error in receiving in evidence the written memorandum made by plaintiff of the listing of the property "in corroboration of plaintiff's other evidence." It could be regarded only as a self-serving declaration. We are also of opinion the court was in error in sustaining plaintiff's objections to questions on cross-examination of plaintiff's witnesses. In the view we take of the case, however, it is unnecessary to refer to or specify the particular rulings.

A careful examination of the entire record shows that the defendant, upon the witness stand, admitted every item mentioned in the written memorandum improperly received by the court, and that every fact sought to be elicited by defendant's counsel upon cross-examination of plaintiff's witnesses was fully testified to by the same witnesses in the course of the trial. We are of opinion, therefore, that these rulings, while erroneous, could not have been prejudicial to defendant's rights, and ought not to be held to constitute reversible error.

[11, 12] Erroneous exclusion of evidence on cross-examination is cured by the admission of evidence on direct examination tending to prove the same facts. Dewey v. Komar, 21 S. D. 117, 110 N. W. 90; Buchanan v. Randall, 21 S. D. 44, 109 N. W. 513. The same rule applies in criminal cases. State v. Smith, 18 S. D.

341, 100 N. W. 740. The erroneous exclusion of evidence cannot be successfully complained of when not prejudicial. State, use of Hart-Parr Co., v. Robb-Lawrence Co., 17 N. D. 257, 115 N. W. 846, 16 L. R. A. (N. S.) 227.

The judgment and order of the trial court are affirmed.