F. W. WHIPPLE, Respondent, v. FIRST NATIONAL BANK OF SLEEPY EYE, a Corporation, C. D. Griffith, and B. B. Griffith. C. D. GRIFFITH, Appellant.

(224 N. W. 297.)

Opinion filed February 18, 1926. Rehearing denied April 6, 1929.

*L. J. Palda, Jr., C. E. Brace,* and *Robert W. Palda,* for appellant.

*F. J. Funke,* for respondent.

BIRDZELL, J. This is an action to recover commission on a sale of real estate. The plaintiff recovered a judgment against one defendant who later moved for judgment non obstante or for a new trial. The appeal is from the order · denying the motion and from the judgment. There are three defendants, First National Bank of Sleepy Eye, Minnesota, C. D. Griffith, and B. B. Griffith. Service was had only upon the individual defendants. At the trial B. B. Griffith appeared in his own behalf and C. D. Griffith appeared by counsel. At the conclusion of the trial the action was dismissed as to B. B. Griffith and the verdict and judgment went against C. D. Griffith. In the complaint the plaintiff alleges the making of a contract between the plaintiff and the defendants in February, 1924, for employment of the former by the latter to sell a certain 800-acre farm in Renville county. (At the trial an amendment was allowed describing the farm as located in Bottineau.

county.) The commission is alleged at $2 per acre, payable out of one half the payments made upon the purchase price until the plaintiff should be fully paid, and there are allegations of payment by the purchaser of more than enough to render the whole commission due.

The first contention of the appellant is that the court erred in permitting the plaintiff to call the defendant B. B. Griffith for cross-examination under the statute. The record shows that both of the individual defendants answered. Their answers are substantially general denials. On the trial the first witness called for the plaintiff was C. D. Griffith who was called for cross-examination under the statute. He testified that he handled the land in question as president of the First National Bank of Sleepy Eye, Minnesota; that the land was sold on contract, the transaction being handled by the witness's son, B. B. Griffith; that he did not know that the plaintiff had had anything to do with the sale of the land; that the first time he met him was in 1925; that he met him then at the ranch house of his (the witness's) son; that there was nothing said between him and Whipple concerning the land. He denied having had any talk with his son, B. B. Griffith, concerning the plaintiff. He admitted that sometime after the land was sold he had a conversation with Whipple in Minneapolis but denied that he had talked with him about having collected money on the contract or having agreed to settle with him. He said he had retained $1,600 of the payments made on the land contract, but that he did not retain it to pay to the plaintiff as his commission. Whipple was then called and testified to the sale of the land. At this stage B. B. Griffith was called for cross-examination. Objection was interposed on behalf of C. D. Griffith on the ground that the cross-examination would be prejudicial to him; that the witness had stated he was trying his own lawsuit and that it appeared that his interest and inclination was adverse to the other defendant. He testified to a conversation he had had with his father, the other defendant, in the winter of 1923 or spring of 1924; that he had talked with his father about getting Whipple to work with him and that he thought it was the proper thing to do. The witness said: "He told me to go and make arrangements with Mr. Whipple and I could pay him $2 an acre, agree to pay him that; one-half as fast as it was paid in;" that he saw Whipple soon after that and told him his father had agreed to pay him $2 an acre; that he was to work with

him, B. B. Griffith, and he was to get one half as fast as it was paid in; that Whipple had found a purchaser for this land; that after that Whipple and the father—hereafter called the defendant—met at the witness's ranch and had a conversation as to what Whipple was to receive for selling this land; that Whipple asked the defendant where he stood on that deal and the defendant said his understanding was that he, Whipple, was to receive $2 per acre, payable one-half as fast as it was paid in; that subsequently in January, 1927, the witness, Whipple, and one Clifford talked over this deal in the defendant's office in Minneapolis and at that time the defendant agreed to pay the plaintiff the money but he wanted him to wait until he had a full settlement with the parties that owned the land. He didn't remember whether he had said anything as to whether he had collected the money. The defendant's attorney demanded the right to cross-examine the witness, to which there was no objection, but before the cross-examination started there was a motion to strike out his testimony, which was overruled and the cross-examination proceeded. We are of the opinion that there was no error in permitting the plaintiff to cross-examine B. B. Griffith. He was a defendant on the record, the case had not been dismissed as to him and, under the procedure followed at the trial, he in effect became the plaintiff's witness and was subjected to cross-examination as such. The jury would have little difficulty in weighing his testimony according to the interest or bias manifested, and it is not apparent that the plaintiff gained any undue advantage by calling this witness for cross-examination and later adopting him as his own witness.

The witness was a party defendant (see Middletown Lumber Co. v. Martin, 10 Ohio App. 188) and had answered denying liability. See Suter v. Page, 64 Minn. 444, 67 N. W. 67, at page 68, where a similar statute was construed as follows:

"The statute means simply this: that any party to the record may be called as a matter of right for cross-examination by the other party to the action, where the record shows that there is an issue between them to be tried."

Much of the argument of the appellant seems to be founded upon a misconception of the statute. Comp. Laws 1913, § 7870. The right to call any such witness existed before the enactment of the statute.

The only effect of the statute is to permit him to be examined "as if under cross-examination" and to remove from the party calling him a sponsorship that would prevent him from rebutting his testimony. Langford v. Issenhuth, 28 S. D. 451, 134 N. W. 889. In this case the plaintiff had no occasion to rebut the testimony of the witness. He had a right to call the witness regardless of the statute and was willing to be bound by his testimony.

It is next argued that there is no testimony in the record tending to show that there was any ratification of the contract of employment by C. D. Griffith. This contention is advanced in support of a specification of error predicated upon the admission, over objection, of testimony to the effect that C. D. Griffith had told the plaintiff after the land was sold that he would pay him $2 an acre. If the testimony of B. B. Griffith is true, the plaintiff was employed in accordance with a previous understanding between him and the defendant; that is, B. B. Griffith was authorized to employ the plaintiff on stated terms and he did so and the plaintiff earned a commission under the terms of that employment. Liability would not depend upon ratification but would result from the earning of the commission under the authorized employment. The testimony above referred to, as well as additional testimony in the record showing that the defendant recognized a claim of the plaintiff to compensation or commission, is clearly competent as proof of an admission that a contractual relation existed, regardless of whether it shows a ratification.

It is further urged, however, that the court erred in instructing the jury to the effect that if B. B. Griffith was not authorized to enter into an agreement with the plaintiff on behalf of the defendant and that later the defendant ratified and confirmed the acts of his son with full knowledge of all the facts, the defendant would be liable. It is argued that there was no evidence in the record from which the jury could find a ratification and, hence, the instruction was prejudicial. We are of the opinion that the evidence showing the meeting of these parties upon the B. B. Griffith ranch and the subsequent meeting in Minneapolis and further showing the discussion of the sale made by the plaintiff at a time when there was knowledge of his claim for commission and a recognition of that claim by the defendant, af-

fords substantial evidence of a ratification on the supposition that the first employment of Whipple by B. B. Griffith was unauthorized.

A number of assignments are predicated upon rulings of the trial court excluding evidence which, if admitted, would have gone to show other transactions between the defendant and B. B. Griffith, whereby the latter had different arrangements for selling land than that which is reflected in this transaction. The plaintiff, of course, was not concerned with other arrangements existing between the two Griffiths; what transpired between them concerning other transactions would not affect him and would be hearsay. Neither would it negative the existence of the arrangement which the evidence tends to show existed in this case with reference to the sale of the land in question.

There is no merit in the contention that C. D. Griffith was acting solely as agent for the bank. The evidence tends to show that he was undertaking to sell the land and authorized a commission contract; if so, he is liable regardless of whether the land belonged to him or to the bank. There is nothing to show that the plaintiff dealt with either him or B. B. Griffith with knowledge of any arrangement between the Griffiths and the bank whereby they were acting merely as agents.

Finding no error in the record, it follows that the judgment must be affirmed. It is so ordered.

BURKE, Ch. J., and CHRISTIANSON, NUESSLE, and BURR, JJ., concur.