**Richard HURNEY and Sandra Hurney, Plaintiffs and Appellants,**

v.

**Robert LOCKE and Ed Buck, Defendants and Appellees.**

No. 13165.

Supreme Court of South Dakota.

Considered on Briefs March 20, 1981.

Decided July 29, 1981.

Charles L. Dorothy of Dorothy, Craig, Palmer & Harris, Sioux Falls, for plaintiffs and appellants.

John A. Shaeffer of Miller & Shaeffer, Flandreau, for defendants and appellees.

MORGAN, Justice.

The Fourth Judicial Circuit Court, Moody County, the Honorable Thomas L. Anderst presiding, granted appellees Robert Locke (Locke) and Ed Buck's (Buck)[1] motion for summary judgment in Richard and Sandra Hurney's (appellants) suit for alleged breach of fiduciary duty and fraud arising from a real estate listing agreement and resulting sale of appellants' house. On appeal, we reverse and remand this judgment.

In 1978, appellants purchased a home in Flandreau, South Dakota, with financing arranged through the Western Bank of Sioux Falls, South Dakota. They secured Federal Housing Authority (FHA) financing for this home through the South Dakota Housing and Development Authority (SDHDA) at an interest rate of 7.5% per year on the unpaid balance. In November of that year, appellants decided to sell their home and move to Sioux Falls. Buck, a licensed real estate agent for Locke Agency, a real estate brokerage, called appellants and asked to represent them in the sale of their home. Several days later, appellants agreed since their efforts to sell the home were unsuccessful. They signed a listing agreement with Locke Agency. Locke was a licensed broker in this agency.

Shortly thereafter, Buck contacted appellants concerning a prospective buyer for their home. Appellants refused the buyer's first offer. Buck conveyed the rejection. In subsequent negotiations, conducted through Buck, the buyer agreed to pay slightly less than appellants' asking price if he could assume the SDHDA mortgage. Then, Locke brought the buyers to Western Bank to discuss financing. Later, arrangements were made to hold the closing at Western Bank.

On October 6, 1978, SDHDA had sent a memorandum to all participating lending institutions in South Dakota. Western Bank received a copy of this memorandum. It stated, in pertinent part,

The authority would like to emphasize the importance of determining whether or not a loan applicant has held an authority loan in the past and what the status of the loan is now.

If the applicant has held an Authority loan and that loan has been assumed by the new purchasers or if FHA/VA has allowed an assumption not approved by the Authority, the applicant cannot apply for another Authority loan. The applicant may apply for another Authority loan if the previous loan has been satisfied, or if the Authority has approved a substitution of mortgagor.

Determining the status of previous Authority loans should be made standard procedure when taking an application.

Although a Western Bank employee, Michael Breidenbach, informed Locke of the

1. We use "appellees" when referring to both Locke and Buck.

memo and its contents, appellants received no such information. Locke, however, stated in his deposition that he was informed of the memo and its contents only one or so days prior to the scheduled closing on appellants' sale. He also stated that, at this time, appellants had completed negotiations with the buyer. Breidenbach, however, stated in his deposition that he had informed Locke of the risks to appellants in permitting assumption at least twice; once as early as when Locke first brought the buyers to Western Bank to discuss financing. The sale closing occurred in Breidenbach's office at Western Bank with appellants and Locke in attendance. Neither Breidenbach nor Locke informed appellants of the SDHDA memorandum on mortgage assumptions.

Subsequently, appellants found a home which they wanted to buy in Sioux Falls. When they applied at Western Bank for financing they were apprised for the first time of their ineligibility under the provisions of the memorandum for another SDHDA loan. Because they were unable to obtain a SDHDA loan, they resorted to conventional financing which required a larger down payment and higher interest rate on the unpaid balance.

Appellants sued appellees seeking the cost differential between SDHDA financing and the conventional financing actually obtained to purchase the new home. Additionally, they sought compensatory and exemplary damages for appellees' intentional and fraudulent failure to inform them of their ineligibility for another SDHDA loan if they allowed the buyer of their Flandreau home to assume the existing SDHDA mortgage. Appellees brought in Breidenbach and Western Bank as third-party defendants.

Appellants' suit against appellees, based on the alleged breach of their agency rela-

tionship, required proof of two basic steps: existence of the agency relationship and determination of the duty allegedly breached. Romero, Theories of Real Estate Broker Liability: Arizona's Emerging Malpractice Doctrine, 20 Ariz.L.Rev. 767 (1978). The trial court granted appellees' summary judgment motion ruling that under *Langford v. Issenhuth*, 28 S.D. 451, 134 N.W. 889 (1912), Locke and Buck were "middlemen" not agents. We reverse this judgment and hold that the trial court relied on *Langford* erroneously.[2]

■ This appeal involves two issues which arise in the context of a real estate transaction. First, are a real estate agent and broker entitled to summary judgment in an action alleging breach of a fiduciary duty for failing to inform the sellers of certain risks in their financial arrangement based on *Langford*? We hold that they are not. Second, does the scope of a real estate agent or broker's fiduciary duty include a duty to inform the principal of material facts involving the subject matter of the agency relationship? We hold that it does.

■ Summary judgment is proper where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. SDCL 15-6-56(c). On review, we give the nonmoving party, like appellants, the benefit of any doubt as to the propriety of granting summary judgment. Wright & Miller, Federal Practice & Procedure, § 2716 at 430 (Vol. 10). The pleadings, affidavits, depositions and every reasonable inference arising therefrom are viewed most favorably toward the nonmoving party. *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 157 N.W.2d 19 (1968); Wright & Miller, supra § 2727 at 528. Moreover, this court is not bound by the factual findings of the trial court. Instead, we conduct an independent review of the record. *E. P. Hinkel & Co., Inc. v.*

2. The trial court also issued summary judgment for Western Bank and Breidenbach against Locke and Buck, because appellants had not alleged an agency relationship with these third-

party defendants. This judgment was not appealed, therefore, we decline comment on this aspect of the case.

*Manhattan Co.,* 506 F.2d 201 (D.C.Cir.1974); See, e. g., *Hunt v. Briggs,* 267 N.W.2d 566 (S.D.1978), overruling on other grounds *Bearry v. Brensing,* 85 S.D. 370, 182 N.W.2d 655 (1970); *Wilson v. Great Northern Railway Company,* supra.

The trial court in relying solely on *Langford* to grant summary judgment, mistakenly determined the application and scope of the rule in that case. The trial court read *Langford* to define a middleman as "a broker whose duties are limited by his contract to finding and producing a purchaser able, ready, and willing to accept his client's terms, or to effect a transaction with his client upon any terms satisfactory to both." Although as far as it went the trial court correctly quoted *Langford,* supra, 134 N.W. at 894, it failed to recognize *Langford's* specific factual context and application.

▆▆▆ In *Langford,* the issue was plaintiff-realtor's right to collect commissions from both parties to a real estate transaction. Here, no commissions are at issue. Moreover, in *Langford,* the court presumed that an agency relationship existed. A middleman is still considered an agent, independent contractor, or within some other legal category to determine most legal responsibilities. *McConnell v. Cowan,* 44 Cal.2d 805, 285 P.2d 261 (1955). "Middleman" is a descriptive category creating an extremely limited exception to the rule that an agent cannot be compensated by third-party without the informed consent of his principal. Annot., 14 A.L.R. 464 (1921). *Langford* affects only the extent of an agent's fiduciary duty concerning compensation from both parties to a real estate transaction. *Batson v. Strehlow,* 68 Cal.2d 662, 441 P.2d 101, 68 Cal.Rptr. 589 (1968); *Anderson v. Thacher,* 76 Cal.App.2d 50, 172 P.2d 533 (1946); See, e. g., *James E. Carlson, Inc. v. Babler,* 144 Minn. 125, 174 N.W. 824 (1919); *Jordan v. Anderson,* 36 S.D. 508,

155 N.W. 769 (1915); See also, *Miller v. Johnson,* 49 S.D. 506, 207 N.W. 478 (1926). Characterizing Locke and Buck as "middlemen" affects only their ability to collect a commission from a person other than their principal.

*Langford* is wholly inapplicable to the issue of whether Locke and Buck are appellants' agents, a relationship they openly admitted, or whether Locke and Buck breached a duty by not informing appellants of the risk in permitting assumption of their FHA mortgage. These issues were raised by appellants' complaint. The trial court erred as a matter of law by applying *Langford* where it should not apply.

▆▆▆ A real estate agent is a licensed professional holding himself out as trained and experienced to render a specialized service in real estate transactions. *Reese v. Harper,* 8 Utah 2d 119, 329 P.2d 410 (1958). Clients rely on the agent's expertise and expect the agent to act in their best interests. *Haymes v. Rogers,* 70 Ariz. 408, 222 P.2d 789 (1950). For these reasons, the relationship between real estate agent or broker and the principal is confidential and fiduciary. *Reese v. Harper,* supra. Locke and Buck owe appellants a duty of utmost good faith, integrity and loyalty. See *Vogt v. Town & Country Realty of Lincoln,* 194 Neb. 308, 231 N.W.2d 496 (1975); *Haymes v. Rogers,* supra.

▆▆▆ Unless otherwise agreed, Locke and Buck owe their principals, like appellants, a duty to use reasonable efforts to fully, fairly and timely disclose information to their principals within their knowledge, which is or may be material to the subject matter of their agency.[3] *Miller v. Berkoski,* 297 N.W.2d 334 (Iowa 1980), citing Restatement (Second) of Agency § 381 at 182 (1958) (breach of duty for failure to disclose purchaser's financial condition). Material

---

3. Although this is an issue of first impression for this court, we have said that, depending on the circumstances, a failure to disclose material information may constitute grounds for disci-

plinary action by the Real Estate Commission. *Clarke v. South Dakota Real Estate Comm'n,* 255 N.W.2d 67 (S.D.1977).

information depends on the facts and circumstances of each case. For example, it influences the principal in accepting or rejecting an offer or making a counter-offer. *Cooke v. Iverson*, 94 Idaho 929, 500 P.2d 830 (1972) (outstanding security interests on consideration for sale); See, e. g., *Jennings v. Lee*, 105 Ariz. 167, 461 P.2d 161 (1969) (purchaser's operating statement); *Simone v. McKee*, 142 Cal.App.2d 307, 298 P.2d 667 (1956) (more favorable offer); *Bjornstad v. Perry*, 92 Idaho 402, 443 P.2d 999 (1968) (note taken by sellers contained usurious interest rate); *Vogt v. Town & Country Realty of Lincoln*, supra (agent's relationship with purchaser); *Schepers v. Lautenschlager*, 173 Neb. 107, 112 N.W.2d 767 (1962) (agent's interest in transaction); *Hopkins v. Wardley Corp.*, Utah, 611 P.2d 1204 (1980) (unreliable nature of purchaser's earnest money check). In the instant case, appellants stated that they would not have gone ahead with the sale had they known about the inevitable SDHDA ineligibility. Although the statement is self-serving, it is uncontroverted. Clearly, the evidence suffices to withstand summary judgment.

■ The scope of appellees' duty depends, among other things, on their knowledge of the information allegedly withheld. *Anderson v. Applebury*, 173 Mont. 411, 567 P.2d 951 (1977) (lack of knowledge concerning encroachment negated duty to disclose). Here, Locke admits knowing the consequences of permitting assumption of a SDHDA mortgage at least one day prior to closing. Breidenbach stated, however, that sometime before closing he informed Locke at least twice of this information. Obviously, Locke had knowledge. The only issue in dispute is when he was informed.

The scope of appellees' duty to disclose also depends on the task entrusted to them, their agreement with appellants, their previous relations with appellants, and the facts of the situation. *Latter & Blum, Inc. v. Richmond*, La., 388 So.2d 368 (1980); See, e. g., *Belleau v. Hopewell*, 120 N.H. 46, 411 A.2d 456 (1980) (no breach where it was not shown that the principal wanted information on the buyer and where the principal was primarily interested in deposit and contract for sale). Locke determined that appellants' SDHDA mortgage was assumable. Buck advised appellants on their counter-offer which included the mortgage assumption. Locke was present at the closing. This evidence and its inferences controverts appellees' assertions that Breidenbach was appellants' agent for the purpose of financing and duty bound to inform appellants. Summary judgment was improper since the genuine issue of fact existed concerning the scope of appellees' duty.

For the aforementioned reasons, we reverse the trial court, vacate its summary judgment and remand for trial.

All the Justices concur.