## LARS BACKE v. J. P. CURTIS AND ANOTHER.[1]

December 21, 1917.

No. 20,547.

**Conspiracy to kite checks — question for jury.**

1. Whether appellant knew that the checks, which he permitted the defendant Gesell to issue to him as payee and which he indorsed and delivered to Gesell, were used by the latter in a check kiting scheme to defraud the bank upon which they were drawn, was a question for the jury under the evidence.

**Bank and banking — knowledge of bank — question for jury.**

2. The issue was also rightly left to the jury whether when honoring these checks the officers of the bank knew, or in the exercise of ordinary prudence should have known, the manner in which Gesell was doing his banking business.

**Trial — charge to jury.**

3. No reversible error is found in the trial court's rulings or instructions.

Action in the district court for Pennington county to recover $3,390, fraudulently obtained by worthless checks from Farmers State Bank of Holt, and repaid to the bank by plaintiff, its president.  The case was tried before Grindeland, J., who when plaintiff rested denied the motion of defendant Curtis to dismiss the action, and at the close of the testimony denied his motion for a directed verdict, and a jury which returned a verdict in favor of plaintiff for $2,850 and interest.  From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant Curtis appealed.  Affirmed.

*Charles A. Pitkin, Charles Loring* and *G. A. Youngquist,* for appellant.
*H. O. Kjomme* and *E. M. Stanton,* for respondent.

[1]Reported in 165 N. W. 488.

HOLT, J.

Plaintiff, as assignee of the Farmers State Bank of Holt, Minnesota, recovered a verdict against H. E. Gesell and J. P. Curtis. The latter alone appeals from the order denying his motion in the alternative for judgment notwithstanding the verdict or a new trial.

The complaint charged the defendants with having conspired to defraud the bank by means of a check "kiting" scheme, and that they successfully carried it out to the bank's damage in the amount of five checks, each being the foundation for a cause of action. It is not deemed necessary to further set forth or summarize the allegations of the pleading, for it is quite lengthy and no point is made in respect to its sufficiency. The main contention is that the evidence does not sustain the verdict, and hence appellant was entitled to judgment notwithstanding.

The defendants were both business men, residing at Thief River Falls, Minnesota. Gesell was running a cigar factory there and also a furniture store under the name of Stageburg Furniture Company. He had a cigar factory at Warren, Minnesota. He kept a deposit account at the Swedish American State Bank at the last named place, one at the First National Bank of Thief River Falls, and in the spring of 1915 opened another in the name of Stageburg Furniture Company with the Farmers State Bank of Holt. He also seems to have had a checking account in another bank at Warren, but what deposits were made therein is left in uncertainty. The defendant Curtis had been in partnership with Gesell in one business venture, and they had dealings with each other during the time the checks here in question were placed in circulation. Curtis was conducting a drug store at Thief River Falls, and also dealt in lands, carried on insurance and other business enterprises. He was a director in the First National Bank mentioned.

Just when Gesell began to "kite" checks does not appear, nor does the record fully disclose the modus operandi at the First National or the Swedish American Banks, except that in each bank he made daily deposits of several hundred dollars during July and up to August 11, 1915, and that the most of the checks deposited with the last named bank were drawn upon the Farmers State Bank of Holt. It likewise appears from the account with the Farmers State Bank of Holt that

139 M.—5

he deposited checks therein daily during July and up to August 14, 1915. So far as disclosed by the record, none of the checks so deposited to the account of Stageburg Furniture Company in the Holt bank bore Curtis' name either as payee or as indorser. From the meager proof as to the makers and payees of the checks deposited, it appears that some checks were drawn by Gesell payable to himself upon his personal accounts in the First National Bank or in the Swedish American Bank and were indorsed by him, others were drawn by Poston Bros. to Gesell's order upon the Citizens Bank of Thief River Falls. As stated, Gesell made daily deposits in these three banks. Among his deposits in the First National Bank to his individual account there was each time a check drawn by Stageburg Furniture Company, by F. O. Stageburg, upon the Farmers State Bank of Holt in favor of J. P. Curtis, the first one, disclosed by the record, being dated July 31, 1915, for $640, and every banking day thereafter a similar check in every respect was deposited, except that the amount thereof was each day ten dollars less than that of the previous day. These checks were indorsed by the payee J. P. Curtis, sometimes in blank, but more often with the stamp "Pay any Bank or Banker or order, J. P. Curtis." The First National Bank indorsed and sent these checks to the Merchants National Bank of Crookston, and then, we take it, the checks were cleared or paid by the Farmers State Bank of Holt through the Red Lake Falls Bank. It will thus be seen that there was no indication of an irregular indorsement or deposit to be gathered from an examination of these checks. The only inference would be that the checks had been deposited in the First National Bank to the checking account of J. P. Curtis, payee, or that he had employed that bank as his agent to collect the same. There is evidence tending to show that Gesell knew that the First National Bank would not place the checks drawn by the Stageburg Furniture Company to the immediate credit of his checking account, unless secured by the indorsement of a responsible party, and for that reason he procured Curtis as payee and indorser. Curtis so understood the situation. It is clear from the evidence that the manner in which Gesell was making use of checks to procure credit at these banks was not the usual, legitimate course of dealing with banking institutions and was calculated to defraud them. It seems equally clear

that the jury could justly find that Curtis was fully cognizant of what Gesell was doing and with open eyes was assisting in obtaining credit for him by means likely ultimately to bring loss to the banks. Indorsing such a large check every day for the use of one whom he would not personally trust for a few hundred dollars without ample security, and knowing that such check would at once be used to obtain an immediate checking credit at a bank, tends to prove an intentional furthering of Gesell's "check kiting" scheme.

The only debatable proposition in this case is whether the evidence conclusively shows that the officers in charge of the Farmers State Bank of Holt knew, or in the exercise of ordinary prudence ought to have known, when the checks involved in this action were paid, that Gesell was engaged in "check kiting." This bank did not, as to these checks, have the same opportunity that the First National Bank had of knowing that Curtis was an accommodation indorser for Gesell, for the latter bank knew that after indorsement they were in the hands of Gesell and were by him deposited to the credit of his checking account. The cashier of the Swedish American Bank of Warren, evidently a victim of the same vicious practice, testified that he had become suspicious of Gesell's banking system some time previous to August 11, but not to an extent to arouse action until that date. The cashier of the bank at Red Lake Falls, the clearing bank for the Farmers State Bank of Holt, did not feel impelled to act upon appearances until the next day when he wrote a letter of warning to the cashier of the latter bank, who in a reply admitted that he had not liked the manner in which Gesell had been doing business. The jury heard the young cashier's explanation of this reply as well as his admissions therein, and we cannot say that when they considered the appearance of the checks in suit, the conduct of the other bankers who had the same, or better, opportunities than the cashier of the Holt Bank to observe Gesell's illegitimate methods of "kiting," and the apparently ample margin he kept in that bank by means of the scheme, the conclusion could not be rightfully reached that the officers of the latter bank did not know and in the exercise of ordinary prudence as bankers were not bound to know of Gesell's fraudulent practice. Bankers do not ordinarily treat their customers as rogues. For a banker to dishonor checks drawn against a sufficient

checking deposit account on mere suspicion might work harm and great loss to both customer and bank. It is also to be noted that it is not from the appearance of the checks made to and indorsed by Curtis that plaintiff's assignor could have been put on its guard, but rather by the character of the checks constituting the deposits made from day to day with it by the Stageburg Furniture Company. And as to these checks the evidence is meager as to who were the makers. The Farmers State Bank of Holt paid the checks upon which the causes of action are predicated in the usual course of business, and the inference would be that it was done in good faith. If there was anything in the character of the deposits to impute knowledge to the bank of Gesell's fraudulent practice we would expect the defense to bring that out.

Errors at the trial are also urged as grounds for a new trial. The court explicitly stated to the jury that plaintiff did not seek to hold Curtis as indorser, hence there was no need of giving any of the requests dealing with an indorser's liability. There was no evidence justifying any application of the value of certain property turned over by Gesell to plaintiff in extinguishment of the checks involved in this action, hence the requested instruction in respect to such property was properly refused. Exception is taken to a refusal to give appellant's tenth request, and to the court charging in lieu thereof as follows:

"In the present case, if you believe from the evidence that defendant Curtis engaged in the practice of letting defendant Gesell draw checks on the Farmers State Bank of Holt, in favor of J. P. Curtis, and that Curtis would then indorse same and hand them back to the said Gesell and if said Curtis knew at the time that Gesell was then engaged in the practice of kiting checks, and that the checks were to be used in said practice of kiting, then defendants were guilty of conspiracy and Curtis would be liable to the plaintiff for any loss sustained by the said Holt bank through the payment of said checks, provided you also find that the bank or its officers did not know or could not have known by the exercise of reasonable precaution that Gesell was engaged in the practice of kiting checks."

In our opinion the instruction given as applied to the facts here states the law more appropriately than the one requested. In the cross-examination of Curtis he was required over objection to disclose certain mort-

gage security held by him at the time of indorsing these checks. The business relations between Gesell and Curtis at the time of the transactions in suit were proper facts to be placed before the jury. Plaintiff could not well be expected to adduce direct proof of an express agreement between defendants to put into operation the fraudulent scheme adopted. The evidence inculpating defendants must of necessity be largely circumstantial, and great latitude was properly given in the cross-examination of defendants. Pfefferkorn v. Seefield, 66 Minn. 223, 68 N. W. 1072.

This appeal appears to turn entirely upon issues of fact, rightly left to the jury under clear and adequate instructions, and we fail to discover any error which calls for another trial.

Order affirmed.