Dewayne R. CLARKE, Appellant and Cross-Respondent,

v.

SOUTH DAKOTA REAL ESTATE COMMISSION, Respondent and Cross-Appellant.

Nos. 11999 and 12006.

Supreme Court of South Dakota.

Argued March 24, 1977.

Decided June 16, 1977.

J. B. Lammers, Lammers, Lammers & Kleibacker, Madison, for appellant and cross-respondent.

William J. Srstka, Jr., Duncan, Olinger & Srstka, Pierre, for respondent and cross-appellant.

DUNN, Chief Justice.

This is an appeal from a decision of the Circuit Court of the Fourth Judicial Circuit affirming the decision of the South Dakota Real Estate Commission which found that appellant was guilty of making a substantial and wilful misrepresentation with reference to a real estate transaction which was injurious to the party for whom appellant acted as agent. The Commission ordered appellant's license suspended for six months and conditioned reinstatement upon his making restitution of $1,000 earnest money in his trust account. On appeal, appellant claims the trial court erred in concluding (1) that the South Dakota Real Estate Commission, as comprised and as it

acted in appellant's case, was not violative of appellant's constitutional rights to due process of law, and (2) that the findings of the Real Estate Commission were supported by the evidence. Respondent cross appealed from that portion of the circuit court order requiring the Real Estate Commission to furnish a transcript for review in circuit court and from its decision refusing to assess costs and disbursements against appellant Clarke. We reverse the appeal and affirm the cross appeal.

On July 5, 1974, Dwayne Jacobson, one of the two complainants, listed his home in Madison with Clarke Realty under a sixty-day listing agreement. When no prospects were found within the sixty-day period, Jacobson signed a contract with another realtor on September 5, 1974, the agreement to go into effect the following day. On the evening of September 6th, appellant called the Jacobsons and told Mrs. Jacobson that he had a buyer. The prospective buyer Edward Madison (the other complainant) testified he had viewed the house on September 2nd and again on September 5th.

At some date on or before September 14, 1974, the Madisons signed the purchase agreement, but Madison testified that he advised that the deal could not be closed until after an auction sale at their Fulda, Minnesota, home. There is some dispute as to when Madison made the $1,000 earnest money deposit, but the most likely date seems to be September 16th. On September 14th, the Jacobsons also signed the purchase agreement and asked appellant if he thought it would be too soon to close on September 21st. He replied that he could see no reason why the deal could not be closed within another week, or September 21st. Appellant then added the closing date to the agreement along with some other matters in regard to drapes, etc. Appellant admits that he knew that the placing of a closing date in the purchase agreement after Madison had signed the instrument was not binding on Madison until he agreed to the change.

On September 20, 1974, appellant called to advise the Jacobsons that there would be no closing on September 21st or until Madison's sale, which would be around October 12th. Appellant testified that he offered the alternatives of keeping the earnest money or being patient and waiting for Madison to purchase the home. After September 21st, the Jacobsons did not involve appellant in the proceedings any further. Jacobson went directly to Madison and sought counsel who helped them negotiate a new agreement. The sale was eventually completed in February 1975.

Appellant contends that the findings are unsupported by substantial evidence and that the Commission's decision was an abuse of its discretion. He relies upon his own testimony that he acted in good faith and notified Jacobson as soon as he learned of a closing date problem. His version of the transaction is that Madison desired to assume Jacobson's mortgage note. Madison also told appellant that he was going to have a sale in Fulda; however, appellant thought Madison was going to obtain an interim loan on a personal note to cover the time period until the Fulda auction. During the week after September 14th, appellant "got wind some way or another" that Madison was having trouble with the bank and learned that Madison was not accepted because, among other things, his wife was filing for a divorce. Appellant then phoned the Jacobsons to tell them that there could be no closing on September 21st.

The Commission contends that Madison had repeatedly told appellant that there could be no closing until matters were cleared up following his auction and that the appellant had made the misrepresentation as to the closing date in order to get in under the time limit of his sixty-day listing agreement and thus obtain a commission. The Commission also found that the detriment from these misrepresentations was the substantial expense incurred by Jacobson in finally concluding the sale with Madison in February of the following year. Appellant, in turn, argues that the expenses incurred were a result of Madison's financial and marital problems rather than any misrepresentations by appellant.

■ First, the appellant claims that the Commission by its composition and by its actions violated his constitutional rights to due process of law. This court has passed on the constitutionality of the Real Estate Commission's authority to handle disciplinary actions against brokers. *Gottschalk v. Hegg*, 1975, S.D., 228 N.W.2d 640. We find nothing in the record to indicate bias or a conspiracy or any special pecuniary interest as indicated in *Mordhorst v. Egert*, 1974, S.D., 223 N.W.2d 501. Further, we find nothing in the record to indicate that the Commission failed to give due process to the appellant in this case. In fact, it was the cross-examination of Commissioner Dohmen that brought out the crucial admission by Jacobson that he knew the placing of the closing date in the purchase agreement after Madison had signed the instrument could not be binding on Madison until he had agreed to this change. Thus, we find no basis for the claim that the Real Estate Commission as composed and as it acted in appellant's case was violative of due process.

■ On the second issue, there is evidence from Mr. Madison to support the conclusion of the Commission that appellant knew there could be no closing until after the auction. The question then becomes whether failure to disclose this to the Jacobsons by telling them he could see no problem in closing within one week was a substantial and wilful misrepresentation to their detriment.

We will consider this matter giving every presumption in favor of the facts as presented by the complainant Mr. Jacobson and without considering any of the explanations of Mr. Clarke. The violation alleged by complainants and found by the Commission was "making a substantial and willful misrepresentation with reference to a real estate transaction which is injurious to the party for which he acts as agent." The record has many conflicts in testimony on this crucial issue, but, at least, the record is clear that at some day on or prior to September 14, 1974, Mr. Madison and his wife signed the sales agreement. He is not sure of the date in his testimony, but all agree that it was signed when it was presented by Mr. Clarke to the Jacobsons for their signatures on September 14th. The testimony is also clear that on that date there was no closing date mentioned in the sales agreement. At this time, the following discussion occurred between Clarke and the Jacobsons:

"Q Stating to the best of your recollection what you stated and what he stated at that time and place, give the conversations?

"A All right. We were anxious to get the house deal closed and then in visiting with Mr. Clarke, we asked him or how soon we could, you know, close the house deal. He mentioned something about that Mr. Madison was going to be assuming our loan at the Northwest National Bank, Madison. This is the first we knew anything about that which was fine with us. It didn't matter. We asked him, you know, would next Saturday be too soon to assume we could close the house deal which would be September 21st. After his reply—

"Q Now what exactly, to the best of your recollection, did he state in reply?

"A He said he saw no reason why we couldn't close within another week being September 21st which would be the following Saturday, which would be easy for us to come back from Garretson. With that statement we set the closing date as September 21st and this is what was written on the purchaser's agreement."

Whatever complainant Jacobson may say now, it is clear that the closing date was not made a condition precedent to the signing by the Jacobsons on September 14, 1974. Instead, it was stated as a desired closing date—"would next Saturday (September 21st) be too soon to assume we could close the house deal * * *." In addition to this, upon cross-examination by Commissioner Dohmen, Jacobson readily admitted that he was fully aware that this inserted closing date could not be binding on Madison until Madison agreed to it.

"COMMISSIONER DOHMEN: When you signed the offer and agreement to purchase, that was on September 14, 1974?

"A Yes.

"COMMISSIONER DOHMEN: At that time there was several items added to the contract?

"A Yes.

"COMMISSIONER DOHMEN: Aren't you aware of, and I'm sure you worked with contracts being in life insurance and past history in banks and stuff, when there is a change in contract it has to be agreeable to all parties?

"A State that question again please?

"COMMISSIONER DOHMEN: When there is a change in a contract, it has to be agreeable to all parties?

"A Yes.

"COMMISSIONER DOHMEN: Why did you accept the contract without being agreeable to the Madisons?

"A I had no reason to believe that it was not in agreement to the Madisons.

"COMMISSIONER DOHMEN: But you fully realized there was a change in the contract at that time that you accepted the offer?

"A The only change that we were aware of would be in regard to the drapes.

"COMMISSIONER DOHMEN: If I stand corrected but I believe you testified before here today and you circled on Exhibit 2 those items that were changed at the date you accepted the contract, the offer?

"A We had no idea that the September 21st was changed in any regard.

"COMMISSIONER DOHMEN: You circled that date?

"A That was the date that was put down when I signed and when my wife signed the agreement. We had no reason to believe that it was not in agreement with the Madisons.

"COMMISSIONER DOHMEN: But you and your wife were aware that by entering these items onto this offer to purchase, that it had to be agreeable to all parties concerned in the contract?

"A True."

Six days later, on September 20th, Mr. Clarke called the Jacobsons and advised that the sale could not be closed on the 21st. Again, we will assume the worst of Mr. Clarke and that he knew the sale could not be closed on the 21st during his conversation with the Jacobsons on September 14th.

The first thing that should be considered is that the Jacobsons by their own testimony did not make the closing date of September 21, 1974, a condition precedent to signing; secondly, when Clarke said "he saw no reason why we couldn't close within another week being September 21st * * *" he did not make any direct promise or representation that it would be settled on the 21st; and, thirdly, Jacobson admits that based on his extensive business and lending experience he was fully aware of the fact that the closing date put in the agreement after Madison's signature had been obtained could not be binding on Madison until Madison agreed to the change.

Thus, we have the complainant Jacobson laboring under a very questionable misrepresentation for six days. Is this sufficient to substantiate the finding that Clarke had deliberately made a substantial misrepresentation to his client that was detrimental to him? We think not.

Giving the complainant every benefit of the doubt, the misrepresentation here was in regard to a matter that Jacobson knew was not controlled by Clarke but, rather, was subject to Madison's approval. It was of a very short duration (6 days) and, as matters progressed, had nothing to do with the problem involved in selling his house. Also, how was this abbreviated misrepresentation injurious to Jacobson? There is nothing in the record to indicate that Jacobson lost a prospect for the house during this six-day period. In fact, he proceeded almost immediately to deal directly with Clarke's prospect Mr. Madison for the purchase of the home.

Unfortunately, at this crucial time in the transaction (September 21st through September 23rd), Mr. Madison became involved in marital problems. A divorce complaint was filed on September 23rd and, by his own testimony, he was forced to devote his full attention to the problems of the divorce, including custody of children, property settlement and child support. Until these matters were straightened out, the purchase of the home was jeopardized by his uncertain marital situation, including his credit rating. In no way could this state of events be foreseen by Mr. Clarke or Mr. Jacobson as apparently it was not even foreseen by Mr. Madison. In fact, his wife signed the original purchase agreement for the house which would lead Clarke and Jacobson and Madison to believe she intended to join in the purchase and move to Madison with her then husband.

One cannot help but also gain the impression from the record that this complaint occurred only after Clarke, Madison and Jacobson could not agree on an amiable settlement of Clarke's claim for a commission and how the $1,000 earnest money was to be divided. This money is still in Clarke's trust account and subject to the Commission's or some court's determination as to the distribution of the earnest money. Any charge of Clarke's misuse of this money was not urged and is not supported by the record. He sought guidance from the Real Estate Commission on how to handle the money and followed its instructions to the letter.

Regardless of the motive, the evidence does not substantiate the finding that Clarke was guilty of substantial and wilful misrepresentation with reference to a real estate transaction which was injurious to the party for whom he acted as agent.

We find that the trial court erred in affirming the findings and conclusions of the Real Estate Commission which were not supported by substantial evidence at the Commission hearing.

■ With regard to the cross appeal, we find that the language used in SDCL 1–26–33 requiring the agent to submit to the reviewing court a certified copy of the entire record of the proceedings on review includes the furnishing of a transcript. It could not be otherwise as SDCL 1–26–35 states that the review shall be conducted by the court without a jury and is confined to the record except in certain special situations set out in SDCL 1–26–34.

■ We further find that the trial court acted within its discretion in refusing to tax costs against appellant Clarke. Thus we reverse that portion of the trial court's order which affirmed the Real Estate Commission on its finding of substantial and wilful misrepresentation by Clarke with reference to a real estate transaction and affirm that portion of the order requiring the Real Estate Commission to furnish a transcript. We also affirm its decision refusing to make appellant Clarke pay the costs and disbursements of the action.

ZASTROW, PORTER and MORGAN, JJ., concur.

WOLLMAN, J., concurs in part and dissents in part.

WOLLMAN, Justice (concurring in part and dissenting in part).

I would affirm the trial court's decision in all respects.

Complainant Jacobson testified, both on cross-examination and in response to a question from a member of the Commission, that he and his wife would not have signed the purchase agreement had they known that the sale would not be closed until October of 1974. The Commission found as a fact that the Jacobsons would not have signed the purchase agreement had they known that the Madisons could not close the sale until after October 12, 1974, and concluded that the reason appellant had made the misrepresentation with respect to the closing date was to make and bind the sale before he lost the listing with the Jacobsons. Obviously, the members of the Commission accepted Mr. Jacobson's testimony, as was their perfect right to do. SDCL 1–26–36 commands the reviewing

court not to substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The trial court correctly held that the Commission's decision was supported by substantial evidence, and we should do the same.

Moreover, we should not substitute our judgment for that of the Commission with respect to the seriousness of appellant's misrepresentation. It is the Commission's function to protect the public from injurious, unethical practices by real estate brokers. Who are we to say that this "abbreviated misrepresentation" was so insignificant as to be harmless. Perhaps in the circumstances of this case the harm was not so great as it might have been in another case, but there was evidence that the Jacobsons had suffered the intangible harm of delay, inconvenience and anxiety as well as the direct economic loss of traveling expenses and legal fees that were incurred at least in part as a result of the fact that the sale was not closed on the date fixed in the purchase agreement. We do no service to the Commission or to the public by depreciating the seriousness of appellant's willful misrepresentation. Just as the members of the Grievance Committee of the State Bar have learned that all too often it is the little foxes of marginal deceit that guide a lawyer's footsteps down the path toward more serious ethical violations, so no doubt have the members of the Commission learned that misrepresentations by a broker, however "abbreviated" they may be in a given case, lead to more serious violations in later cases. The Commission has obviously taken a very serious view of the duty of honest disclosure required of a broker, and it is not for us to say that the Commission should have condoned appellant's willful misrepresentation.

I agree with the majority opinion's disposition of the other issues raised by the appeal.