OUR OWN HARDWARE COMPANY, A Minnesota Corporation, Plaintiff and Appellee,

v.

K–MAC, INC., A South Dakota Corporation, and Everett MacKaben, Defendants and Appellants.

No. 13558.

Supreme Court of South Dakota.

Submitted On Briefs March 25, 1982.

Decided April 21, 1982.

Jon Mattson of Driscoll, Mattson, Rachetto & Christensen, Deadwood, for plaintiff and appellee.

Thomas E. Brady of Richards, Hood & Brady, Spearfish, for defendants and appellants.

MORGAN, Justice.

This is an appeal by defendant, K-Mac, Inc., and its president Everett MacKaben (MacKaben), from a final judgment which adjudged K-Mac, Inc. liable to plaintiff, Our Own Hardware Company, for a debt of $118,884.73. The case was tried without a jury and the trial court entered findings of fact and conclusions of law. MacKaben raises three issues: (1) whether an agreement exists by which Our Own Hardware can charge interest on past due accounts in excess of the statutory maximum allowable interest; (2) whether a letter from plaintiff allegedly notifying MacKaben of an increase in this "service charge" was improperly admitted into evidence because it lacked a proper foundation; and (3) whether the trial court erred by refusing MacKaben's motion for a continuance when it became apparent at trial that MacKaben's associate membership had been terminated by plaintiff? We reverse and remand for judgment in accord with this opinion.

On December 11, 1979, MacKaben signed an associate member agreement with Our Own Hardware. Although the associate member agreement does not contain the signature of any Our Own Hardware official, MacKaben ordered, received and paid for merchandise from Our Own Hardware. Our Own Hardware is a wholesaler of merchandise which MacKaben sold at retail. In pertinent part, the associate member agreement provides, "as an associate member, [K-Mac, Inc.] will observe and follow standards and policies expected of regular Our Own members and will undertake to utilize, as part of a good-faith trial, the available Our Own services."

Approximately one month later, on January 21, 1980, MacKaben personally guaranteed the payment of any debt incurred during K-Mac, Inc.'s relationship with Our Own Hardware. As guarantor, MacKaben waived any right to notice of a change in payment terms. This waiver, however, did not include K-Mac, Inc.

In January or February of 1980, to the best of anyone's knowledge, MacKaben received a policy manual. Page 30 of the policy manual reads:

A service charge of one and one-half percent per month will be made on any or all invoices which are not paid within thirty days of the due date. The past due condition persists, special attention will be

given by the credit department regarding suspension of credit, security collateral, refinancing and operational analysis.

K-Mac, Inc. ordered additional merchandise after February 1980.

Although the billings reflect that a 2% past due service charge was assessed against an invoice of February 5, 1981 due on February 10, 1981, Our Own Hardware introduced exhibit # 6 dated March 2, 1981. Graf testified that all members received exhibit # 6, which states,

> As a result of the continuing increase in the cost of carrying past due accounts, the executive committee of your board of directors at their last meeting authorized an increase in the service charge. Effective with the service charges billed on the statements due March 25, 1981, the rate has been increased to two percent per month.

■ K-Mac, Inc. is a South Dakota corporation obviously organized for profit. As such, it may agree to pay an interest rate in excess of the statutory maximum rate. SDCL 54–3–7.1. Both parties agree that the service charges exceeded the statutory maximum of 12%. See SDCL 54–3–5. As a corporation, however, K-Mac, Inc. is expressly excepted from the operation of SDCL 54–3–5, which requires an express written contract before an interest rate in excess of the maximum statutory rate may be charged. K-Mac, Inc. argues that the use of the word "agree" in SDCL 54–3–7.1 should be interpreted to require an express written contract. We reject this argument.

■ The expression of one thing in SDCL 54–3–5 and its absence in SDCL 54–3–7.1 indicates a legislative intent that an express written contract is not required under SDCL 54–3–7.1. *See Hurney v. Locke*, 308 N.W.2d 764 (S.D.1981). South Dakota Codified Laws 54–3–7.1, however, does require an agreement.

■ From the outset, Our Own Hardware was charging 1.5% interest on all past due accounts. Notice of this appeared in the policy manual. Without objection to this service charge, MacKaben ordered additional inventory and made a $15,000 payment. These facts satisfy the requirements of SDCL 54–3–7.1.

■ MacKaben argues that exhibit # 6 should not have been admitted into evidence because it lacked the proper foundation under SDCL 19–17–1. This statute requires authentication of the exhibit as a condition precedent to its admissibility. The letter must also relate to the specific controversy in question. SDCL 19–12–1 et seq. The record reflects that Paul Graf, Our Own Hardware's credit manager, had knowledge that exhibit # 6 was a letter to *members* concerning an increase in service charge rates. *See* SDCL 19–17–1(1). He admitted, however, not having knowledge of whether the letter was sent to K-Mac, Inc. In fact, he testified that K-Mac, Inc.'s membership had been terminated in early 1981 but he was uncertain as to the date. Moreover, the record contains letters from Graf indicating that after pleadings were served that K-Mac, Inc.'s relationship with plaintiff would extinguish. The pleadings were served before March 2, 1981. The letter of March 2, 1981 is addressed to members but the record equivocates on whether K-Mac, Inc. was a member at that time. Finally, Our Own Hardware did not introduce a mailing list containing K-Mac, Inc.'s name. Admittedly, MacKaben testified that his manager might have received the letter. If Our Own Hardware intended to rely on a foundation through the recipient of the letter to meet its burden, they could have called the manager as a witness. Neither party, however, called the manager. The trial court erred in admitting exhibit # 6.

Exhibit # 6 is the only notice of Our Own Hardware's intent to increase the service charge by .5%. Since the exhibit is inadmissible and K-Mac, Inc. agreed to pay a 1.5% interest charge, we remand this case for determination of damages based on only the 1.5% service charge. This holding renders K-Mac, Inc.'s final argument meritless.

All the Justices concur.